# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## Wheeling

**PHILIP ALIG**, **SARA J. ALIG**, **ROXANNE SHEA** and **DANIEL V. SHEA**, individually and on behalf of a class of persons,

          Plaintiffs,

v.                                      **Civil Action No. 5:12-CV-114**
                                                  Judge Bailey

**QUICKEN LOANS INC.**, and **TITLE SOURCE, INC.**, d/b/a Title Source Inc. of West Virginia, Incorporated,

          Defendants.

## ORDER ON THE ISSUE OF STANDING

Pending before this Court is the issue of whether the plaintiffs and class members have Article III standing to pursue this action.

### Procedural Background

Plaintiffs Phillip Alig, Sara J. Alig, Roxanne Shea, and Daniel V. Shea (Plaintiffs) filed this lawsuit in West Virginia state court, both individually and on behalf of a class of West Virginia citizens. They subsequently filed an amended complaint. In the amended complaint, the plaintiff class is defined as follows:

> All West Virginia citizens at the time of the filing of this action who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, obtained mortgage loans from Defendant Quicken,

1

> and (a) were provided unsigned loan documents at closing, (b) were assessed loan discount, courier, or notary fees, or (c) for whom Quicken obtained appraisals through an appraisal request form that included an estimate of value of the subject property.

[Doc. 1-1 at 15]. Plaintiffs brought their lawsuit against defendant Quicken Loans and defendant Title Source, Inc., d/b/a Title Source Inc. of West Virginia, and a class of defendant appraisers.

After plaintiffs filed the amended complaint, Quicken Loans filed a notice of removal in the United States District Court for the Northern District of West Virginia, claiming that the district court had jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). Thereafter, plaintiffs filed a motion to remand, arguing that the local controversy exception applied. The district court agreed with plaintiffs and remanded the case to state court. Quicken Loans then filed a petition for permission to appeal with this Court.

On appeal, the United States Court of Appeals for the Fourth Circuit vacated the decision remanding the case and remanded the case to this Court for a determination as to whether the named defendant appraisers satisfied the "at least one defendant" requirement for the local controversy exception to CAFA. ***Quicken Loans Incorporated v. Alig***, 737 F.3d 960 (4th Cir. 2013). Thereafter, plaintiffs withdrew their motion to remand.

This case proceeded in due course, and, ultimately this Court conditionally certified plaintiffs' class and granted in part and denied in part each of the parties' motions for summary judgment. The court then held an evidentiary hearing on damages, after which it imposed a statutory penalty of $3,500 as to unconscionability for each of the 2,769 violations,

for a total of $9,691,500. The court also awarded plaintiffs the appraisal fees they had paid as damages for breach of contract, for a total of $968,702.95. The court did not award separate damages for conspiracy.

The defendants appealed the decisions of this Court to the Fourth Circuit, which, in a published split decision, affirmed in part and reversed in part. The majority found that the district court's summary judgment on the breach-of-contract claim was premised on a misunderstanding of the parties' contract and required reversal and remand for further consideration. ***Alig v. Quicken Loans Inc.***, 990 F.3d 782, 794–98 (4th Cir. 2021).

As to unconscionable inducement, the panel majority affirmed. Recent West Virginia case law, it explained, supported a clear *Erie* prediction. Unconscionable inducement required showing that the defendant engaged in "unconscionable" conduct and that that conduct "contributed to" the plaintiff's decision to enter a contract. *Id*. at 798–803. And the West Virginia Supreme Court of Appeals would conclude that Rocket's conduct fit the bill. *Id*. at 803–07.

Rocket, the panel majority had already recognized, had a duty to "obtain a fair, valid and reasonable appraisal" of each borrower's property. *Id*. at 796. All the more so in the refinance context. After all, the panel majority explained, "[a]ppraisal procedures" are "particularly important in refinancing agreements." *Id*. at 806. Unlike home purchases, where "adversarial parties represented by competing real estate agents" temper one another's evaluation of home value, in the refinancing context, borrowers and lenders—at least lenders planning to securitize their loans—have a shared incentive to reach a high loan value. *Id*. "Amidst these various dangers and incentives—and stepping into the middle of a transaction

between parties with unequal bargaining power—the impartial appraiser [is] the only trained professional available to objectively evaluate the value of the home." *Id*.

Yet the evidence showed that Rocket had deliberately "tainted" this appraisal process. *Id*. at 798. It "sought to pressure appraisers to inflate their appraisals" in two distinct ways—(1) sharing estimates[1] to engender an inevitable "anchoring effect" that "subconsciously" increased appraisers' estimates, and then (2) imposing explicit pressure on appraisers whose estimates fell short. *Id*. at 798, 803–06. Given the significance of the appraisal, the panel majority explained, it was unconscionable for Rocket to conceal from its borrowers the fact that it had sought to influence its appraisers' estimates in these ways. *Id*. at 806. And doing so amounted to unconscionable inducement: There was "no genuine dispute" that the company's appraisals—"and, more importantly, their guise of impartiality"—contributed to the decision to refinance. *Id*.

The defendants next petitioned the United States Supreme Court for a ***writ of certiorari***. The Supreme Court granted the writ, vacated the judgment and remanded the case to the United States Court of Appeals for the Fourth Circuit for further consideration in

---

[1] While the defendants refer to these value estimates as "owner's estimates," it is actually unclear who really provided the estimated value. For example, both the Aligs and Sheas denied having provided such a figure to the lender. [Docs. 206-1, Exh. D., Alig Dep. & Exh. E, Shea Dep.]; *see also* [Doc. 206-2, Exh. F., Mem. of Op. & Order in ***Brown v. Quicken Loans*** (Findings of Fact & Conclusions of Law) (Feb. 25, 2010) at ¶ 18 ("It is unclear as to who provided the Anticipated Property Value."); [Doc. 206-2, Exh. G, Lyon Trial Testimony Vol. 5 (Oct. 9, 2009) at 84:15-85:4 ("I do not know if [the applicant's estimated value] came from [the consumer] or came from [Quicken's mortgage banker])].

light of *TransUnion LLC v. Ramirez*, 594 U.S. ——, 141 S.Ct. 2190 (2021). *Rocket Mortg., LLC v. Alig*, 142 S. Ct. 748 (2022).

The Fourth Circuit heard argument on the remand and ultimately determined to remand the issue of standing under *TransUnion* to this Court.

## Discussion

In *TransUnion*, the Supreme Court held that under Article III, only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021).

Justice Kavanaugh, writing for a 5-4 majority, wrote that "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *Id*. at 2200 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–341 (2016)).

Justice Kavanaugh added:

Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." For there to be a case or controversy under Article III, the plaintiff must have a "'personal stake'" in the case—in other words, standing. *Raines* [*v. Byrd*, 521 U.S. 811, 819 (1997)].

\*   \*   \*

5

To answer that question in a way sufficient to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560–561 (1992). If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." ***Casillas v. Madison Avenue Assocs., Inc.***, 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.).

\*     \*     \*

In sum, under Article III, a federal court may resolve only "a real controversy with real impact on real persons." ***American Legion v. American Humanist Assn.***, 588 U. S. ——, ——, 139 S.Ct. 2067, 2103 (2019).

\*     \*     \*

What makes a harm concrete for purposes of Article III? As a general matter, the Court has explained that "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." ***Sprint Communications Co. v. APCC Services, Inc.***, 554 U.S. 269, 274 (2008); *see also* **Steel Co. v. Citizens for Better Environment**, 523 U.S. 83, 102 (1998). And with respect to the concrete-harm requirement in particular, this Court's opinion in ***Spokeo v. Robins*** indicated that courts should assess whether the alleged injury to the plaintiff has a "close relationship" to a harm

6

"traditionally" recognized as providing a basis for a lawsuit in American courts. 578 U.S. at 341. That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury. *Spokeo* does not require an exact duplicate in American history and tradition. But *Spokeo* is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts.

As *Spokeo* explained, certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.

*Id*. at 2203.

Let us now compare the *TransUnion* requirements for standing with the majority opinion in the Fourth Circuit:

First, Defendants argue that a significant number of the class members are uninjured and therefore lack standing. The question of class members' standing "can be seen as implicating either the jurisdiction of the court under Article III or the procedural issues embedded within Rule 23's requirements for class certification." *Krakauer*, 925 F.3d at 652. While we review class-certification questions for abuse of discretion, our review of our Article III

jurisdiction is de novo. See **Curtis v. Propel Prop. Tax Funding, LLC**, 915 F.3d 234, 240 (4th Cir. 2019).

Defendants argue that there are class members who have not suffered any injury. Accordingly, in Defendants' view, the district court lacked Article III power to award damages to those class members. And moreover, they argue, the district court should not have certified a class containing uninjured members. But whether framed through Article III or Rule 23, Defendants' arguments lack merit.

Plaintiffs paid an average of $350 for independent appraisals that, as we conclude below, they never received. Instead, they received appraisals that were tainted when Defendants exposed the appraisers to the borrowers' estimates of value and pressured them to reach those values. Of course, **"financial harm is a classic and paradigmatic form of injury in fact," Air Evac EMS, Inc., v. Cheatham**, 910 F.3d 751, 760 (4th Cir. 2018) (quoting **Cottrell v. Alcon Laboratories**, 874 F.3d 154, 163 (3rd Cir. 2017)), and "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury,'" **Czyzewski v. Jevic Holding Corp.**, ––– U.S. –––, 137 S. Ct. 973, 983 (2017) (citing **McGowan v. Maryland**, 366 U.S. 420, 430–431 (1961), in which the Court concluded that "appellants fined $5 plus costs had standing").

Defendants argue that Plaintiffs were not injured because they benefitted from obtaining the loans. Even if that is true, "[o]nce injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has

8

> enjoyed from the relationship with the defendant. Standing is recognized to complain that *some particular aspect* of the relationship is unlawful and has caused injury." 13A Charles Alan Wright & Arthur R. Miller, **Federal Practice and Procedure** § 3531.4 (3d ed. 2008 & Supp. 2020) (emphasis added); *see, e.g.,* **Allco Fin. Ltd. v. Klee**, 861 F.3d 82, 95 n.10 (2d Cir. 2017) ("[T]he fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing.") (quoting **Ross v. Bank of Am., N.A. (USA)**, 524 F.3d 217, 222 (2d Cir. 2008))). In sum, "there is simply not a large number of uninjured persons included within the plaintiffs' class." **Krakauer**, 925 F.3d at 658.

**Alig v. Quicken Loans Inc.**, 990 F.3d 782, 791–92 (4th Cir. 2021), *cert. granted, judgment vacated sub nom.* **Rocket Mortg., LLC v. Alig**, 142 S. Ct. 748 (2022).

Each of the plaintiffs and class members paid up front for a fair, valid and reasonable appraisal of the property. Due to the actions of the defendants, they did not receive fair, valid and reasonable appraisals. The actions of the defendants in tampering with the valuations and the fact that the appraisals were not fair, valid and reasonable were concealed from the plaintiffs and class members. This was fraud, *see* **Gaddy Engineering Co. v. Bowles Rice McDavid**, 231 W.Va. 577, 746 S.E.2d 568 (2013), which is a close historical or common-law analogue for their asserted injury.

As noted by the Judge Wynn in the Fourth Circuit opinion "financial harm is a classic and paradigmatic form of injury in fact."

9

This Court finds that nothing in *TransUnion* changes the findings of the majority of the Fourth Circuit panel. The Fourth Circuit panel should therefore reissue its prior opinion, with the added clarification that nothing in *TransUnion* alters this settled basis for Article III standing.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** November 28, 2022.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE